J. S64012/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PRESTON WAYNE WALTERS, | : | No. 159 MDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, December 10, 2014,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0002967-2014

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED DECEMBER 01, 2015**

Preston Wayne Walters appeals from the judgment of sentence of

December 10, 2014, following his conviction of robbery.[1]  We affirm.

The trial court provided the following relevant facts:

> A review of the record reveals the following
> events:  On May 3, 2014, Aida Algarin-Cruz was
> working as a cashier at the Sunoco station on
> Second and Maclay Streets in Harrisburg.  [Bench
> Trial, Notes of Testimony, December 10, 2014,
> pp. 5-6].   Ms. Algarin-Cruz and cashier Patricia
> Buxton were working the same shift that day.  [N.T.,
> 12-10-14, p. 7].  Ms. Algarin-Cruz testified that she
> was stocking the milkshake machine when a
> gentleman walked into the convenience store, asked
> for a pen and paper, and went to the lottery area to
> write something down.  [N.T., 12-10-14, pp. 7-8].
> The gentleman, who was identified by several

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3701.

witnesses at trial as the defendant, asked Ms. Algarin-Cruz about phone cards and then gave her a handwritten note, [N.T., 12-10-14, p. 8]. The note directed Ms. Algarin-Cruz to open the register and hand over all of the money. [N.T., 12-10-14, p. 8-9]. Ms. Algarin-Cruz testified that she felt shocked, and handed the note to her co-worker, Patricia Buxton. [N.T., 12-10-14, p. 9-11]. Defendant told Ms. Algarin-Cruz that someone had taken his girlfriend hostage and if they didn't hand over the money, he would blow their heads off [N.T., 12-10-14, p. 11]. Ms. Algarin-Cruz said that Defendant's demeanor was "scary." [N.T., 12-10-14, p. 12]. The cashiers told Defendant that they would not give him any money and that, whatever the situation, they would call the cops. Defendant walked away at that point, and the cashiers locked the door behind him. [N.T., 12-10-14, p. 17].

Patricia Buxton, an eight-year employee with Sunoco, confirmed Ms. Algarin-Cruz's testimony. After Ms. Cruz gave Ms. Buxton the note from Defendant, Ms. Buxton punched the security button. She iterated that someone had his girlfriend, and he was looking out the window and said "they were going to shoot us if we didn't give [the money] to him." [N.T., 12-10-14, pp. 27-29]. Ms. Buxton testified that they did not give Defendant any money. After Defendant left the store and the cashiers had locked him out, Ms. Buxton observed him standing near a pay phone by Maclay Street, and at that point memorized what he was wearing -- a gray tee shirt, wire-rim glasses, camouflage shorts, and tennis shoes. [N.T., 12-10-14, pp. 30-32]. When the police arrived, Ms. Buxton rode with the officers and was able to identify Defendant on the street. [N.T., 12-10-14, p. 32].

Officer Daniel Antoni of the Harrisburg City Police testified that when they caught up with Defendant and asked him what happened, he stated

that he had been seeing a girl named Beth,[2] that she was a drug user, and she owed money to someone. He said that a man had come to his house and told Defendant he would kill him if he didn't get the money that Beth owed to him. Specifically, he said it was $300.00. The officers obtained the note that Defendant had written for the cashiers at Sunoco. [N.T., 12-10-14, p. 40]. Defendant was taken into custody and read his *Miranda* rights.

Testimony from Detective Jarrett Ferrari revealed that he re-Mirandized Defendant while he was in the Criminal Investigation Division. Defendant agreed to talk to Detective Ferrari without an attorney present. [N.T., 12-10-14, p. 43]. In his statement, Defendant revealed the following: On the day in question he was woken up by Beth. When he opened his door for her, another person pushed her in and started waving a gun around, saying Beth owed him $300.00. Beth and the other man left and returned later. The man told Defendant that Beth had to come up with the money and put a gun to her head. He then put the gun near Defendant's chest and they all got into the man's car. When they got close to the Sunoco, the man parked the car and told Beth to go get the money. Beth then turned to Defendant and asked him to get it, at that point Defendant entered the store, wrote the note, and told the cashier that there was a man holding someone hostage. Defendant left the store after the alarm was hit, and got back into the car. The man told him to get out, and Defendant went back home and called 911. [N.T. 12-10-14, pp. 45-47].

Defendant took the stand and largely confirmed what he said in his statement to Detective Ferrari. Additionally, Defendant testified that he asked the cashier to borrow a phone to call the police, as there was a person outside with a gun who would have no problem coming into the store and shooting, and his phone was not working. [N.T. 12-10-14, p. 58].

---

2 Beth's last name is not found in the record. She did not testify at trial.

Trial court opinion, 5/28/15 at 1-4.

Following a non-jury trial, appellant was found guilty on December 10, 2014. Immediately after the trial, the trial court sentenced appellant to 10 to 20 years' imprisonment. Appellant filed a post-sentence motion which was denied on December 22, 2014. Appellant then filed a notice of appeal on January 20, 2015. The trial court ordered appellant to produce a concise statement of errors complained of on appeal, and appellant complied with the trial court's order on April 28, 2015, pursuant to Pa.R.A.P. 1925. The trial court then filed an opinion.

Appellant raises the following issues for our review:

I. Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's conviction where Appellant was acting under duress?

II. Whether the trial court erred in denying Appellant's Post-Sentence Motion where Appellant's conviction was against the weight of the evidence so as to shock one's sense of justice where Appellant did not engage in acts which constitute the offense of which he was convicted?

Appellant's brief at 5.

The first issue for our review is whether the Commonwealth presented sufficient evidence to counter appellant's defense of duress. As with all sufficiency of the evidence claims, we are subjected to the following standard:

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."
>
> Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted).

> Moreover, when applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa.Super. 2011) (citations omitted).

Under 18 Pa.C.S.A. § 309(a),

> It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

The duress defense is unavailable if defendant, "recklessly placed himself in a situation where it was probable that he would be subjected to duress." 18 Pa.C.S.A. § 309(b); *see also Commonwealth v. Markman*, 916 A.2d 586, 606-607 (Pa. 2007). The elements of duress are (1) an immediate or imminent threat of death or serious bodily harm; (2) a well-grounded or reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to escape except by committing the criminal act. *Commonwealth v. Baskerville*, 681 A.2d 195, 200 (Pa.Super. 1996) (citation omitted).

After careful review of the record, we find that the evidence more than sufficiently disproves appellant's duress defense. The Commonwealth presented testimony from both employees working at Sunoco who interacted with appellant. Both employees testified that appellant, after writing a note demanding money from the cash register, told them that his girlfriend had been taken hostage and that he was threatened with bodily harm if he did not get the money to whomever was holding his girlfriend hostage. Their testimony indicated that appellant's demeanor was "scary," and that appellant exited the Sunoco as soon as the employees told him that they would be calling the police.

Appellant testified at trial in his own defense. He testified that before he entered the Sunoco, he and Beth were walking toward the Sunoco when Beth took off running down a nearby alleyway. Appellant also testified that

after passing a note to the cashier at Sunoco, he asked if he could borrow a telephone in order to call the police because his cell phone was not working.

We find that the evidence was more than sufficient to allow the trial court to determine that appellant's trial testimony was a fabrication and that he did not act under any threat of duress or serious bodily injury and that he had every opportunity to avoid committing his criminal acts. The evidence also established that appellant had ample opportunity to escape or call for help. Instead of asking the employees at Sunoco to call the police on his behalf, appellant first passed them a note demanding money from the cash register. By doing so, appellant acted with the requisite intent to commit a robbery. Appellant's testimony is completely uncorroborated, and the trial court, as fact-finder, is free to disbelieve appellant's testimony in its entirety.[3] Therefore, his defense of duress is without merit.

The second issue appellant raises is whether the trial court's denial of appellant's post-sentence motion claiming that his conviction was contrary to the weight of the evidence was an abuse of discretion.

Our standard of review for determining whether a verdict is compatible with the weight of the evidence is well settled:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

---

[3] From arrest through trial, appellant provided factually different versions of what occurred.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error in judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted) (emphasis deleted).

A fact-finder is free to believe all, part, or none of the evidence presented. ***Commonwealth v. Mosley***, 114 A.3d 1072, 1087 (Pa.Super. 2015) (citations omitted). This court cannot assume the task of assessing the credibility of the witnesses or evidence presented at trial, as that task is within the exclusive purview of the fact-finder. ***Commonwealth v. Hankerson***, 118 A.3d 415, 420 (Pa.Super. 2015) (citations omitted). Appellant avers that he did not have the requisite intent to be convicted of attempted robbery because he only sought to "alert the authorities so the individual holding appellant and [appellant's] girlfriend hostage would be apprehended." (Appellant's brief at 15.) As the trial court noted, however, the Commonwealth produced credible evidence that appellant passed a note to the cashiers at Sunoco demanding that they give him all the money in the cash register, thereby indicating that appellant did possess the requisite intent to commit a robbery. (***See*** notes of testimony, 12/10/14 at 71.) We therefore find the trial court did not abuse its discretion by denying appellant's weight of the evidence challenge.

Judgment of sentence affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 12/1/2015